UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-10020-CR-KING

UNITED STATES OF AMERICA

    Plaintiff,

v.

NORMAN SOLIS GONZALES,
ET. AL.,

    Defendant.
_____/

## DEFENDANT'S OMNIBUS MOTION TO DISMISS THE INDICTMENT

The Defendant, Norman Gonzales Solis, by and through undersigned counsel, respectfully submits this Omnibus Motion to Dismiss the Indictment. For the multiple reasons set forth herein, Mr. Solis prays this Honorable Court dismiss the Indictment against him.

## FACTS

The Defendant, Norman Gonzales Solis is a 32 year old Colombian national who was arrested on board a vessel of unconfirmed Colombian registration approximately 350 miles off the Pacific coast of the Mexico-Guatemala border.

According to the Criminal Complaint, on May 10, 2016, a Marine Patrol Aircraft (MPA) detected two go-fast vessels (GFV) \ approximately 350 nautical miles southwest of the Mexican/Guatemalan border. A U.S. Coast Guard Cutter, the Mohawk, was notified and deployed its over-the-horizon vessel (OTH) to investigate.

The MPA observed that one of the GFVs was named the Daminy Luana. The aircraft crew allegedly observed three crew members on board jettisoning bales of suspected narcotics.

1

When the OTH approached the GFV, USCG crew members tried to verify the nationality of the vessel. The GFV crew members claimed it was an Ecuadoran vessel but the Ecaudoran Government could neither confirm nor deny if this was so.

A USCG helicopter was dispatched to intercept the other GFV. After disabling the second GFV with gunfire, the OTH approached. After allegedly jettisoning several bales, all seven crew members jumped overboard. No nationality was confirmed for this vessel. Defendant Solis was allegedly aboard the second GFV.

Subsequently, all 9 crew members were taken to Key West where they first entered the U.S. The crew members, including Defendant Solis, were charged with possession with intent to distribute 191 kilograms of cocaine.

## BASIS OF PROSECUTION:
## THE MARITIME DRUG LAW ENFORCEMENT ACT ("MDLEA")

The Maritime Drug Law Enforcement Act, 46 U.S.C. § 70501 et. seq., authorizes the Government's prosecution of crimes that take place wholly outside the United States, and, for purposes here, do not involve United States citizens. In the instant case, the Government seeks to prosecute Mr. Solis for allegedly possessing cocaine with the intent to distribute while aboard a vessel subject to the jurisdiction of the United States, that is, a stateless vessel under 46 U.S.C. § 70502(1)(A), while in international waters.   As will be described below, the MDLEA is unconstitutional on its face and as applied, and thus the Indictment against Mr. Solis must be dismissed. The MDLEA Is Facially Unconstitutional

The Maritime Drug Law Enforcement Act is unconstitutional, as it violates the Due Process Clause and the Sixth Amendment right to a jury trial because in 1996, Congress removed jurisdiction as an element that must be proved to a jury beyond a reasonable doubt: "Prior to

1996, there was a consensus among the circuits the 'the jurisdictional requirement in section 1903(a) is an element of the crime charged and therefore must be decided by the jury.'" *United States v. Moreno- Morillo*, 334 F.3d 819, 828 (9th Cir. 2003) (quoting *United States v. Medjuck*, 48 F.3d 1107, 1110 (9th Cir. 1995) (citing cases from the First, Third, and Eleventh Circuits)). See, e.g., *United States v. Medina*, 90 F.3d 459 (11th Cir. 1996) (holding that failure to submit jurisdiction to the jury was error and not harmless). *Medina* was subsequently superseded by statute, 46 U.S.C. § 1903(f), now codified at 46U.S.C. § 70504, which notes that "[j]urisdiction with respect to a vessel subject to this chapter is not an element of an offense." Congress' removal of jurisdiction as an element renders the MDLEA unconstitutional, as the "Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Mr. Solis recognizes this argument is foreclosed by *United States v. Tinoco*, 304 F.3d 1088 (11th Cir. 2002), but raises the issue for further review.

In the instant case, the Government asserts that the captured vessel is stateless, which can be proven in any one of three ways: (1) by proving that a claim of registry was denied by the claimed nations; (2) by proving that the master or person in charged failed, when asked, to make a claim of nationality or registry; or (3) by proving that the master or person in charge made a claim of registry but that the claimed nation did not "affirmatively and unequivocally" confirm the vessel's nationality. See 46 U.S.C. § 70502(d)(1)(A)-(C). The Government usually purports to "prove" that a vessel is stateless through a Department of State certification and the assertions made therein by the certifying official. It is anticipated that the same would follow in this case. The evidence relating to the vessel's statelessness is factual, and should be resolved by a jury. In *United States v. Perlaza*, 439 F.3d 1134 (9th Cir. 2006), the Ninth Circuit agreed.

Acknowledging Congress' direction that jurisdiction is no longer an element and simply a preliminary question of law to be settled by the trial judge, the Ninth Circuit still noted that "we are mindful that we must honor the strictures of the Fifth and Sixth Amendments." *Perlaza*, 439 F.3d at 1116. In the case of determining whether a vessel is stateless for purposes of jurisdiction, the court reasoned that "this case presents one of the 'limited circumstances' in which 'facts not formally identified as elements of the offense charged' must be submitted to the jury and proved beyond a reasonable doubt." Id. (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 85 (1986)). The Ninth Circuit recognized that elements are defined as "fact[s] ... legally essential to the punishment to be inflicted" and thus found that the question of jurisdiction must be resolved by the jury. *Perlaza*, 439 F.3d at 1116 (citing Harris v. United States, 536 U.S. 545, 561 (2002)). In Harris, the Supreme Court admonished that "Congress may not manipulate the definition of a crime in a way that relieves the Government of its constitutional obligations to charge each element in the indictment, submit each element to the jury, and prove each element beyond a reasonable doubt." *Harris*, 536 U.S. at 556 (citing *Jones v. United States*, 526 U.S. 227, 240-41 (1999)). In adding 46 U.S.C. § 70504, Congress "essentially overrode by statute the consensus prevailing at that time that juries, not judges, would decide whether [the] jurisdictional element was satisfied." *Perlaza*, 439 F.3d 1167.

In sum, there exists a circuit-split on whether the factual determination of statelessness should be made by a judge or jury. The fact remains, however, that Congress' removal of jurisdiction as an element violates the Sixth Amendment and renders the MDLEA constitutionally infirm. The Indictment against Mr. Solis must be dismissed.

***The MDLEA Is Unconstitutional As Applied to Mr. Solis***

The Maritime Drug Law Enforcement Act is unconstitutional as applied to drug trafficking offenses lacking a nexus to the United States because drug trafficking does not qualify as a crime of universal jurisdiction and absent the nexus requirement contained within the Define and Punish Clause of Article I, limiting Congress's Legislative Powers, is not a felony under the Piracies and Felonies Clause.

The issue is whether the "Piracies and Felonies committed on the high Seas" provision of Article I, § 8, Clause 10 of the United States Constitution ("the Define and Punish Clause") is an open-ended authorization for Congress to punish any crimes on the high seas, regardless of whether they have a connection with the United States. For the reasons addressed here, Mr. Solis maintains that the Maritime Drug Law Enforcement Act is not a valid exercise of Congress' power under this Clause. Although Solis raises this issue, he recognizes that this argument is currently foreclosed by binding precedent. *United States v. Campbell*, 743 F.3d 802 (11th Cir. 2014). Mr. Solis therefore raises this argument for purposes of further review.

If Congress has plenary authority to determine which felonies to define and punish on the high seas, then the correlative powers to define and punish "Piracies" and "Offences against the Law of Nations" are redundant. This is because every piracy and every offence against the law of nations can be defined as a felony as well. It can be presumed that the Framers did not craft this constitutional clause so carelessly. The fact that the powers are mentioned separately draws attention to the one feature that distinguished piracy from all other felonies and offenses at the time. Piracy was the only universal jurisdiction crime. See Eugene Kontorovich, The Piracy Analogy: Modern Universal Jurisdiction's Hollow Foundation, 45 Harv.Int'l L.J. 183, 190-205 (2004) (discussing piracy's status as the prototypical universal jurisdiction crime). Thus, when dealing with piracy, Congress can use the uniquely broad jurisdictional scope associated with

that offense. However, if Congress could, likewise, apply universal jurisdiction to any high seas felony, it would obliterate the only legal distinction between piracies and felonies. See generally, Eugene Kontorovich, The "Define and Punish" Clause and the Limits of Universal Jurisdiction, 103 Nw.U.L.Rev. 149 (2009).

Constitutional construction disfavors a reading of one provision that then renders another superfluous. See, e.g., *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 174 (1803) (Marshall, C.J.) (rejecting an interpretation that would make part of the Constitution "mere surplusage," because "[i]t cannot be presumed that any clause in the constitution is intended to be without effect"). Separating the term "Piracies" from "Felonies" and "Offences against the Law of Nations" implies that Congress can punish piracies the way nations generally could–without regard to the nationality of the vessel or offender. *United States v. Smith*, 18 U.S. (5 Wheat.) 153, 162 (1820) (holding that piracy in the Constitution referred to the well-known and uniform meaning of the term in international law). "However, if 'Felonies' can be punished without regard to a U.S. nexus, then all distinction between it and 'Piracies' falls away. The Constitution may as well have just said 'crimes.'" Kontorovich, The "Define and Punish" Clause and the Limits of Universal Jurisdiction, 103 NW.U.L.Rev. at 167. The logical conclusion is that "Felonies" under Article I § 8 must be understood to refer to conduct that is either of universal jurisdiction, like piracy, or conduct that requires a nexus to the United States.[1]

In other words, the Define and Punish Clause's separate enumeration of piracies from felonies can be viewed in two different ways. Either piracy is the one and only offense which Congress can ever punish without a United States nexus, or, since piracy was the only universal

---

[1] The Eleventh Circuit has previously held that Congress' power to punish offenses under the Law of Nations did not extend to drug trafficking in territorial waters of a foreign nation. *United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012).

6

jurisdiction offense at the time of the Founding, the Clause means to allow Congress to exert universal jurisdiction over all offenses that contemporary international law treats as universally cognizable. Either way, drug trafficking under the MDLEA fails both tests.

Drug trafficking is not a crime of universal jurisdiction. The principle of universal jurisdiction allows a state to "define and prescribe punishment for certain offenses recognized by the community of nations as of universal concern . . . , even where none of the bases of jurisdiction indicated in § 402 is present." See Restatement (Third) of the Foreign Relations Law of the United States (the "Restatement") § 404. The Restatement identifies only "piracy, slave trade, attacks on or hijacking of aircraft, genocide, war crimes, and perhaps certain acts of terrorism" as universal jurisdiction crimes. Restatement § 404. See also Marisa L. Maskas, Comment: Trafficking Drugs: Afghanistan's Role in Russia's Current Drug Epidemic, 13 Tulsa J. Comp. & Int'l Law 141, 169 (Fall 2005) (noting that the Princeton Principles on Universal Jurisdiction, called a "progressive restatement of international law on the subject of universal jurisdiction," similarly lists only "piracy, slavery, war crimes, crimes against peace, crimes against humanity, genocide, and torture" as offenses subject to universal jurisdiction). Drug trafficking is not on this list. Id. "Despite assertions by some legal scholars, there is certainly no general consensus that drug trafficking should be afforded universal jurisdiction." Anne H. Geraghty, Universal Jurisdiction and Drug Trafficking: A Tool for Fighting One of the World's Most Pervasive Problems, 16 Fla.J.Int'l L. 371, 372 (2004). See also Erik Franckx, Pacta Tertiis and the Agreement for the Implementation of the Straddling and Highly Migratory Fish Stocks Provisions of the United Nations Convention on the Law of the Sea, 8 Tul.J.Int'l & Comp.L. 49, 68 (Spring 2000) ("In 1992, Italy's highest court rejected the idea that a customary rule of

international law had emerged which allowed high seas intervention with respect to foreign vessels suspected of drug trafficking.") (citation omitted.).

Although Congress, when enacting the MDLEA, stated that drug trafficking is "universally condemned" and is a "threat to the security and societal well-being of the United States," it is not Congress's declaration that establishes conduct as subject to universal jurisdiction under customary international law. Rather, the scope of universal jurisdiction is "ascertained by consulting the works of jurists, writing professedly on public law; or by the general usage and practice of nations; or by judicial decisions recognizing and enforcing that law." *United States v. Smith*, 18 U.S. (5 Wheat.) 153, 160-61, 5 L.Ed. 57 (1820), see also Anthony J. Colangelo, The Legal Limits of Universal Jurisdiction, 47 Va.J. Int'l L. 149, 150 (2006) ("If national courts prosecute on grounds of universal jurisdiction, they must use the international legal definitions . . . of the universal crimes they adjudicate; otherwise, their exercise of universal jurisdiction contradicts the very international law upon which it purports to rely.").

Further, universal condemnation is by itself insufficient to place an offense within the scope of universal jurisdiction. As the Supreme Court noted in United States v. Furlong, murder may be universally condemned, but it is not subject to universal jurisdiction. 18 U.S. (5 Wheat.) 184, 197, 5 L.Ed. 64 (1820) ("[P]unishing [murder] when committed within the jurisdiction . . . of another nation [ ] has not been acknowledged as a right, much less an obligation. It is punishable under the laws of each State . . . ."). For universal jurisdiction to apply to an offense, the international community must reach both a "substantive agreement" that the offense is "universally condemned" and a "procedural agreement that universal jurisdiction exists to prosecute [that offense]." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 762, 124 S.Ct. 2739, 159

8

L.Ed.2d 718 (2004) (Breyer, J., concurring). Because no source of customary international law has designated drug trafficking as an offense subject to universal jurisdiction and because the academic community is in accord that drug trafficking is not a universal offense, drug trafficking is not subject to universal jurisdiction. This is especially true here where the offense involved the transportation of cocaine in the Pacific Ocean, off the coast of Costa Rica. There is zero indication that the cocaine was coming to the United States. Because the drug trafficking charged in this case is not a crime of universal jurisdiction and has no connection to the United States, it does not qualify as a felony under the "Felonies" provision of Article I § 8. Therefore, Mr. Solis's prosecution for drug trafficking under the MDLEA is unconstitutional as applied and the Indictment against him must be dismissed as the District Court lacks subject-matter jurisdiction over the offense.

## CONCLUSION

For the foregoing reasons, Mr. Solis prays this Honorable Court GRANT his Motion to Dismiss.

                    Respectfully submitted,

                    By: *Arturo V. Hernandez*
                    ARTURO V. HERNANDEZ, ESQ.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the December 6, 2016, the foregoing document was served upon was filed electronically and copies furnished to all parties

        Respectfully Submitted,

        By: : *Arturo V. Hernandez*

        ARTURO V. HERNANDEZ, P.A.
        Courthouse Center
        40 N.W. 3rd Street, Suite 200
        Maimi, FL  33128
        Tel: 305-579-4850
        Fax: 305-381-6869
        Florida Bar No.: 324078
        Avhlaw@bellsouth.net